IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AZFAR ALI, | : | CIVIL ACTION |
|     Plaintiff | : | |
| | : | |
| vs. | : | NO. 15-6865 |
| | : | |
| OCWEN LOAN SERVICING, INC., | : | |
| and WELLS FARGO BANK, N.A., | : | |
| as Trustee for the MORGAN | : | |
| STANLEY ABS CAPITAL I INC. | : | |
| TRUST 2006-HE8, | : | |
|     Defendants | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                                  **March 29, 2017**

      Azfar Ali brings this action against Ocwen Loan Services, Inc., and Wells Fargo Bank, N.A., alleging violations of the Real Estate Settlement Procedures Act, 15 U.S.C. § 2605, and Regulation X, 12 C.F.R. § 1024.35 in Count I; Pennsylvania's Unfair Trade and Consumer Protection Law, 73 P.S. § 201-3.1, and Pennsylvania's Fair Credit Extension Uniformity Act, 73 P.S. § 2270.4 in Count II; and the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) in Count III. The defendants have filed a motion to dismiss Count II of the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The plaintiff has responded. For the following reasons, I will deny the motion in its entirety.

## I. BACKGROUND[1]

Mr. Ali owns and resides in a home in Macungie, Pennsylvania, which he purchased in 2006. The residence is encumbered by a mortgage, originally in the amount of $273,472. Sometime before February 10, 2009, Mr. Ali's mortgage was assigned to the Morgan Stanley ABS Capital I Trust 2006-HE8, but the assignment was not recorded. Around that same time, Mr. Ali entered into a Loan Modification Agreement with Saxon Mortgage Services. The modification was also not recorded. At some point before January 10, 2011, Defendant Ocwen began servicing the mortgage on behalf of the Trust. Mr. Ali's contractual monthly mortgage payments were $1,533.47.

On October 24, 2011, Mr. Ali received an invitation from Ocwen to apply for a modification for his loan. Mr. Ali contacted Ocwen to inquire about refinancing options. Ocwen responded that as a servicer, it could not refinance loans directly and thus did not participate in a refinancing program.

On March 20, 2013, Mr. Ali submitted an application for a mortgage loan modification to Ocwen, complete with all requested documents. In a letter dated April 10, 2013, Ocwen offered Mr. Ali a HAMP[2] Trial Period Plan ("TPP") with three trial payments of $1,941.98 to be made on or before May 1, 2013, June 1, 2013, and July 1,

---

[1] The facts are gleaned from the amended complaint and the extrinsic documents upon which it is based. See GSC Partners, CDO Fund v. Washington, 368 F.3d 228, 236 (3d Cir. 2004). For the purposes of this motion, they are presented in the light most favorable to the plaintiff, as the non-moving party, and are accepted as true with all reasonable inferences drawn in his favor.

[2] The Home Affordable Modification Program ("HAMP") began in early 2009. It is part of the Troubled Asset Relief Program, under which banks and servicers (such as Ocwen) have received billions of taxpayer dollars. Its purpose is to help millions of families modify and restructure their mortgage loans to avoid foreclosure.

2013.  The offer specifies: "To accept this offer, you must make your first monthly trial period payment."  It further clarifies: "If each payment is not received by Ocwen Loan Servicing in the month in which it is due, this offer will end and your loan will not be modified under the Making Home Affordable Program."

Upon receiving Ocwen's HAMP TPP offer and before May 1, 2013, Mr. Ali called Ocwen to discuss the offer.  He rejected it on the telephone with Mr. Yash, an Ocwen representative.  Mr. Ali confirmed that he wanted to continue paying his property taxes and homeowner's insurance premiums directly, and requested that Ocwen not escrow his account as required by HAMP.  Ocwen also allegedly and falsely represented to Mr. Ali's that his rejection of the HAMP loan modification had been confirmed.

Based upon Ocwen's false representations that a trial payment must be made to accept the HAMP program and that Mr. Ali's rejection of the loan modification had been confirmed, Mr. Ali did not make the trial period payment and instead continued making his contractual mortgage payments of $1,533.47 from May 2013 through the present.

The amended complaint further alleges that immediately after Mr. Ali's rejection of the mortgage modification, and Ocwen's purported acknowledgment of the rejection, Ocwen began mishandling Mr. Ali's contractual mortgage payments.  In fact, Ocwen admits that it treated the mortgage loan as if it had been modified through HAMP, allocating portions of Mr. Ali's contractual monthly payment to an escrow account for property taxes and homeowner's insurance.

Defendant Ocwen allegedly allocated Mr. Ali's mortgage payments to a suspense account, and not towards the principle and interest of the mortgage in May 2013 and June

3

2013. Ocwen applied late charges to Mr. Ali's May 2013 mortgage payment, even though the payment was not late. Ocwen's misallocation of these payments also included the application of $614.34 towards an escrow account, an account which should never have existed because Mr. Ali's payment allocated to the escrow account was not applied to interest or principle of the mortgage.

Although Ocwen had allegedly represented to Mr. Ali that his mortgage loan would not be included in the HAMP modification, Ocwen improperly treated his contractual mortgage payments as "Forbearance Payments," which were deposited into suspense accounts and used to establish escrow accounts. Ocwen also misapplied Mr. Ali's contractual mortgage payments to a homeowner's insurance policy. Mr. Ali had always paid his property taxes and homeowner's insurance directly. Mr. Ali renewed his current homeowner's policy and paid the premiums directly to the insurance company on June 20, 2013. Unbeknownst to Mr. Ali, Ocwen opened and paid a homeowner's insurance policy on Mr. Ali's behalf with the contractual mortgage payments Mr. Ali made, instead of applying them to the principle and interest. In fact, less than a week after Ocwen paid the homeowner's policy on Mr. Ali's behalf, Ocwen sent Mr. Ali a letter indicating that Mr. Ali's application for a loan modification had been denied. The reason given for the denial was, "The application was withdrawn at your request."

A year later in June 2014, the same situation was repeated. Mr. Ali paid his homeowner's insurance directly, and Ocwen paid Mr. Ali's homeowner's insurance with Mr. Ali's contractual mortgage payments.

Ocwen also allegedly misapplied Mr. Ali's contractual mortgage payments to his annual property taxes. Mr. Ali had always paid his property taxes directly. Based on Ocwen's representations that his mortgage had not been modified through HAMP, Mr. Ali paid his property taxes directly to his town's tax assessor on August 10, 2013. Defendant Ocwen paid the annual property taxes to Mr. Ali's town's tax assessor on August 14, 2013, with money from Mr. Ali's contractual mortgage payment. In October 2013, Ocwen was refunded for the double payment of the annual property taxes and Ocwen applied the refund to the impermissibly opened and operated escrow account. Mr. Ali has never received any refund from Ocwen stemming from the double payment of the $4,132 in property taxes.

Mr. Ali disputed the late charges Ocwen applied to his May 2013 payment and confirmed his rejection of the HAMP loan modification. He also disputed the treatment of his mortgage as if it had been modified by HAMP in June 2013, in July 2013, twice in November 2013, twice in January 2014, in April 2014, in May 2014, in August 2014, in November 2014, in April 2015, and in June 2015.

Apparently, Defendant Ocwen finally acknowledged on May 22, 2015, that there had been no loan modification. Mr. Ali brought this action against the defendants on December 30, 2015. Nevertheless, Ocwen sent Mr. Ali notices that his mortgage was in default and his home would be foreclosed upon on January 6, 2016, January 21, 2016, February 3, 2016, and February 22, 2016.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Following the Supreme Court decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009), pleadings standards in federal actions have shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss under Fed. R. Civ. P.12(b)(6). Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009); see also Phillips v. County of Allegheny, 515 F. 3d 224, 230 (3d Cir. 2008).

Therefore, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The court must accept all of the complaint's well-pleaded facts as true but may disregard legal conclusions. Iqbal, 556 U.S. at 679. Second, a district court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. Id.; see also Phillips, 515 F.3d at 234-235. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in Twombly, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id. at 557.

### III. DISCUSSION

In Count II, Mr. Ali alleges that the defendants engaged in unfair methods of competition and unfair or deceptive acts or practices, as defined by Pennsylvania's Unfair Trade and Consumer Protection Law, by attempting to collect a debt in violation of the Fair Credit Extension Uniformity Act. The defendants seek to dismiss this claim arguing that Mr. Ali failed to allege either justifiable reliance or ascertainable loss. I do not agree.

Pennsylvania's Fair Credit Extension Uniformity Act ("FCEUA") prohibits unfair or deceptive acts or practices in the collection of debt. See 73 P.S. § 2270.2. Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), like the FCEUA, is "a remedial statute intended to protect consumers from unfair or deceptive practices or acts" in the conduct of trade or commerce. Balderston v. Medtronic Sofamor Danek, Inc., 152 F.Supp.2d 772, 776 (E.D. Pa. 2001). Section 201-2(4) of the UTPCPL

7

"lists specific unfair methods of competition and unfair or deceptive acts or practices, and includes a catchall provision." Hunt v. U.S. Tobacco Co., 538 F.3d 217, 221 (3d Cir. 2008).

Mr. Ali's claims under the FCEUA and the UTPCPL are analyzed, at least as an initial matter, together: "Since the FCEUA does not provide individuals with the right to institute private causes of action for violations, individual plaintiffs must use 73 Pa. Stat. § 201-9.2, the remedial provision of the UTPCPL, to obtain relief." Benner v. Bank of Am., N.A., 917 F.Supp.2d 338, 359 (E.D. Pa. 2013); see FCEUA, 73 Pa. Stat. § 2270.5(a) ("If a debt collector or creditor engages in an unfair or deceptive debt collection act or practice under this act, it shall constitute a violation of [the UTPCPL]").

The Superior Court of Pennsylvania has stated:

> The inclusion of a violation of the FCEUA as also being a violation of the UTPCPL, evinces a clear intent by our Legislature that FCEUA claims be treated in the same manner as other private action claims under the UTPCPL. . . . As a private action under Section 201-9.2 of the UTPCPL, FCEUA claims therefore must plead that a plaintiff suffered an ascertainable loss as a result of a defendant's prohibited action. As stated earlier, this requires that justifiable reliance be pled.

Kern v. Lehigh Valley Hosp., Inc., 108 A.3d 1281, 1290 (Pa. Super. 2015). The Kern court clarified that a plaintiff proceeding under the UTPCPL's remedial provision on a FCEUA claim must plead an ascertainable loss resulting from justifiable reliance on the defendant's conduct in order to survive a Rule 12(b)(6) motion. Courts have consistently adopted Kern's interpretation of the pleading requirements under the FCEUA and UTPCPL and required plaintiffs asserting FCEUA claims under the UTPCPL's remedial

provision to plead ascertainable loss and justifiable reliance.  See Kaymark v. Bank of America, N.A., 783 F.3d 168, 182 (3d Cir. 2015) (finding that Kern's interpretation of the pleading requirements for FCEUA claims brought under the UTPCPL is "persuasive and indeed, logical."); Walkup v. Santander Bank, N.A., 147 F. Supp. 3d 349 (E.D. Pa. Dec. 3, 2015) (requiring the plaintiff to plead both ascertainable loss and justifiable reliance).  Therefore, Mr. Ali's FCEUA and UTPCPL claims may only proceed if he has set forth sufficient factual allegations demonstrating ascertainable loss and justifiable reliance.

Upon review of the amended complaint, I find that Mr. Ali has properly pled that he justifiably relied upon the defendants' representations that Mr. Ali had rejected the HAMP modification agreement, when in fact the defendants treated the loan as if it had been modified anyway, bolstering his claims under FCEUA Sections 2270.4(b)(5)(ii) and § 2270.4(b)(6)(i).  Based on his understanding that the defendants had accepted his rejection of the modification, Mr. Ali continued paying his contractual mortgage payment on time every month as he always had, instead of paying the HAMP modified payment of $1,941.98.  Mr. Ali also paid his homeowner's insurance and property taxes directly, instead of relying upon the defendants to pay them, or instead of paying the defendants an additional monthly amount to escrow his homeowner' s insurance and property taxes.

It is clear that Mr. Ali relied upon the defendants' representations that the HAMP modification had been rejected, and that his reliance resulted in ascertainable losses.  Mr. Ali identified several ways in which has paid money after the defendants misled him into believing that they would not treat his mortgage as if it had been modified through

9

HAMP.  These losses include administrative fees; late fees; expense charges; a property inspection fee; a loan document copy fee; an undisclosed fee of $53.34; two years of homeowner's insurance paid by Mr. Ali twice, once directly and once through his contractual mortgage payment; and one year of property taxes, again paid by Mr. Ali twice, once through his contractual mortgage payment and once directly.  I also note that Mr. Ali has never received any refund from the defendants stemming from the double payment of the $4,132 in property taxes.  Mr. Ali also alleges that he incurred costs associated with disputing this quandary with the defendants.  All of these losses are similar to what this court has found sufficient to allege ascertainable loss, specifically money losses caused by a defendant.  Walkup v. Santander Bank, N.A., 147 F.Supp.3d 349 (E.D. Pa. Dec. 3, 2015); Allen v. Wells Fargo, N.A., No. 14-cv-5283, 2015 U.S. Dist. LEXIS 114310 (E.D. Pa. Aug. 27, 2015); Benner v. Bank of Am., N.A., 917 F. Supp. 2d 338, 360 & n. 16 (E.D. Pa. 2013); and Yelin v. Swartz, 790 F.Supp.2d 331, 336-37 (E.D. Pa. 2011).  Regardless of the defendants' argument to the contrary, Mr. Ali has properly and sufficiently pleaded justifiable reliance and ascertainable losses.  Accordingly, I will deny the defendants' motion to dismiss Count II.

      An appropriate Order follows.